# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION II

| | |
|---|---|
| MATTHEW FROHLICH and WASHINGTON STATE REPUBLICAN PARTY, | No. 61803-6-II |
| Appellants, | |
| v. | |
| CLARK COUNTY and GREG KIMSEY, in his official capacity as the Clark County Auditor, STEVE HOBBS, in his official capacity as the Washington State Secretary of State, | UNPUBLISHED OPINION |
| Respondents. | |

MAXA, P.J. – Matthew Frohlich and the Washington State Republican Party (collectively, Frohlich) appeal the trial court's grant of summary judgment in favor of Clark County, Clark County Auditor Greg Kimsey, and intervenor Secretary of State Steve Hobbs (collectively, the County) in Frohlich's lawsuit challenging the certification of the 2024 election results for the Senate seat in Washington's 18th Legislative District (LD-18).

In the 2024 LD-18 Senate election, Adrian Cortes defeated Brad Benton by 173 votes. Frohlich – who did not run for the position but lives within LD-18 – filed an election challenge.

He asked the court to prevent certification of the election, but he did not request to preliminarily enjoin certification. The Clark County Canvassing Board subsequently certified the election.

In his complaint, Frohlich alleged that Kimsey improperly counted votes of people who previously had lived within LD-18, but had submitted change of address forms and no longer lived within LD-18. Frohlich claimed that Kimsey failed to investigate voter registration address changes and remove those voters from the LD-18 voter rolls. He alleged that the number of these votes exceeded Cortes's margin of victory.

RCW 29A.68.020(5) states that a person may bring an election challenge under RCW 29A.68.013 on the basis of "illegal votes." But RCW 29A.68.020(5)(b) contains an exclusion: "Illegal votes do not include votes cast by improperly registered voters who were not properly challenged under RCW 29A.08.810 and 29A.08.820." RCW 29A.08.810 and 29A.08.820 require challenges to voter registrations before an election occurs. It is undisputed that Frohlich did not challenge any voter registrations before the election.

In addition, RCW 29A.68.110(1) states that no election for an office may be set aside because of illegal votes unless if the illegal votes were not counted, a different person would have won the election. It is undisputed that Frohlich did not attempt to show that Benton (or any other candidate) would have won the election instead of Cortes if the allegedly illegal votes had not been counted.

We hold that (1) RCW 29A.68.020(5)(b) precludes Frohlich's election challenge as a matter of law because he did not bring a voter registration challenge before the election; and (2) RCW 29A.69.110(1) precludes Frohlich's election challenge as a matter of law because he did not show that if the allegedly illegal votes were not counted, a different person would have won the election.

Accordingly, we affirm the trial court's grant of summary judgment in favor of the County.

FACTS

In the 2024 general election, Cortes and Benton were the candidates for LD-18's Senate seat. LD-18 lies entirely within Clark County and contains the town of Battle Ground and the northern suburbs of Vancouver in unincorporated Clark County. *See* WASH LEGISLATURE, 2025 WASH. LEG. DIST. MAP, https://leg.wa.gov/media/flxjubby/2025-state-district-maps-and-members.pdf.

The Clark County Canvassing Board initially certified that Cortes won the election over Benton by 172 votes, a 0.2 percent difference. After an automatic recount, the Canvassing Board determined that Cortes won the election by 173 votes. The Canvassing Board issued an amended certification of the recount results.

Cortes took office on January 13, 2025. Neither Cortes nor Benton are parties to this lawsuit.

*Procedural History*

On December 6, 2024, Frohlich filed a lawsuit against the County and Kimsey in his official capacity. Frohlich alleged that the County improperly counted multiple ballots of people who no longer lived at the address on their voter registration within LD-18, in violation of RCW 29A.68.013. Frohlich also alleged that the federal National Change of Address (NCOA) database showed that multiple people changed their address to an address no longer within LD-18, but returned a ballot for the LD-18 Senate election. Frohlich alleged that Kimsey negligently failed to check the NCOA database and change those voters' registrations to inactive status when they moved outside of Clark County.

3

Frohlich's complaint requested (1) a declaration that the LD-18 Senate race could not be certified, (2) an injunction prohibiting certification of the LD-18 senate election, (3) a writ of quo warranto to determine Cortes's lawful right to the Senate seat, (4) a writ of mandamus and/or prohibition prohibiting certification of the LD-18 Senate election, and (5) other equitable relief "to ensure that the errors, omissions, negligence, and improper ballots alleged above do not result in the certification of an election in which the putative margin of victory is smaller than the number of improperly cast ballots."  Clerk's Papers at 6-7.

Secretary of State Hobbs moved to intervene in the lawsuit as the state's chief election officer.  The trial court granted the motion.

Frohlich did not seek a temporary restraining order or a preliminary injunction preventing the certification of the LD-18 Senate election while Frohlich litigated his claims.  After an automatic recount, the Clark County Canvassing Board certified the results of the election on December 12, 2024.

*Summary Judgment*

Both Frohlich and the County filed cross-motions for summary judgment.  In Frohlich's summary judgment motion, he alleged that the County (1) failed to transfer the registration of voters who moved out of LD-18 and counted their votes, and (2) failed to investigate address changes for voters who moved out of LD-18 before tallying their ballots.  Frohlich argued that RCW 29A.08.620(2) required the County to transfer voters who moved out of LD-18 but still remained within Clark County, and that their votes within LD-18 were illegal.

In the County's summary judgment motion, among other arguments, the County argued that (1) Frohlich's lawsuit based on allegedly illegal votes was barred under RCW 29A.68.020(5)(b) and RCW 29A.08.820(2) because he failed to file his challenge 45 days before

4

the election, (2) Frohlich could not show that subtracting allegedly illegal votes from the vote total would have changed the results of the election as required in RCW 29A.68.110(1), and (3) Frohlich could not establish that Kimsey neglected his duty, committed an error, or engaged in a wrongful act in order to challenge the election results, as required by RCW 29A.68.013.

The trial court denied Frohlich's summary judgment motion. After additional briefing and submissions, the court granted the County's summary judgment motion. Frohlich appeals the trial court's grant of summary judgment in favor of the County.

ANALYSIS

A.    MOOTNESS

The County argues that some of the relief Frohlich sought in his complaint – preventing certification of the election – is moot. However, Frohlich does not argue on appeal that he is entitled to decertify the election – he is requesting a new special election. And the County does not argue that Frolich's other claims are moot. Therefore, we conclude that this appeal is not moot.

B.    STANDARD OF REVIEW

We review summary judgment orders de novo. *Mihaila v. Troth*, 21 Wn. App. 2d 227, 231, 505 P.3d 163 (2022). We view all evidence in the light most favorable to the nonmoving party, including reasonable inferences. *Id.* Summary judgment is appropriate when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. *Id.* A genuine issue of material fact exists if reasonable minds can come to different conclusions on a factual issue. *Id.* But summary judgment can be determined as a matter of law if the material facts are not in dispute. *Protective Admin. Servs., Inc. v. Dep't of Revenue*, 24 Wn. App. 2d 319, 325, 519 P.3d 953 (2022).

C.      ELECTION LAW PRINCIPLES

State and federal law place numerous requirements on election officials regarding the registration of voters and the administration of elections.  For example, the secretary of state must cancel the registration of deceased voters and ineligible voters such as felons.  RCW 29A.08.510; RCW 29A.08.520(2).  The secretary of state also must refer cases where a person may be registered to vote in more than one county to county auditors to resolve the issue.  RCW 29.08.610.  The National Voter Registration Act, 52 U.S.C. §§ 20501-20511, has similar requirements regarding the confirmation of voter registration, the process for removing voter registrations, and removing names from voting rolls.  *See* 52 U.S.C. § 20507(b)-(d).

Voters must provide a residential address and mailing address when registering to vote. RCW 29A.08.010(b), (e).  At the time Frohlich filed his election challenge, a voter changing their address within the same county may submit a form to the county auditor or update their address with a state agency such as the department of licensing or post office.  *See* Former RCW 29A.08.410 (2024); *see also* 52 U.S.C. §§ 20505(a)(3), 20504(d).[1]

County auditors also have specific duties regarding the maintenance of voter registration lists when they receive change of address information.  Former RCW 29A.08.620 (2024) states,

> (1) Each county auditor must request change of address information from the postal service for all mail ballots.
>
> (2) The county auditor shall transfer the registration of a voter and send an acknowledgment notice to the new address informing the voter of the transfer if change of address information received by the county auditor from the postal service, the department of licensing, or another agency designated to provide voter registration services indicates that the voter has moved within the county.

---

[1] We cite the law in effect at the time of Frohlich's election challenge.  The legislature amended several election statues in 2024 that took effect on June 1, 2025.  LAWS OF 2024, ch. 56, § 1.  The current version of RCW 29A.08.410 lists the same requirements as the former statue, but applies to voters who change residences generally, not just those who change their residence within a county.

(3) The county auditor shall place a voter on inactive status and send to all known addresses a confirmation notice and a voter registration application if change of address information received by the county auditor from the postal service, the department of licensing, or another agency designated to provide voter registration services indicates that the voter has moved from one county to another.

(4) The county auditor shall place a voter on inactive status and send to all known addresses a confirmation notice if any of the following occur:

   (a) Any document mailed by the county auditor to a voter is returned by the postal service as undeliverable without address correction information; or
   (b) Change of address information received from the postal service, the department of licensing, or another state agency designated to provide voter registration services indicates that the voter has moved out of the state.

A voter placed on inactive status may request to vote at an election on a ballot applicable

to their current residence and be restored to active status. RCW 29A.08.625(1).

State law also provides methods to challenge a voter's registration. "Registration of a

person as a voter is presumptive evidence of his or her right to vote." RCW 29A.08.810(1).

RCW 29A.08.810(1)(c) permits a person to challenge a person's voter registration when "[t]he

challenged voter resides at a different address than the residential address provided." RCW

29A.08.810(1)(c) further outlines what a party challenging a voter's registration based on the

voter's address must show.

RCW 29A.08.820 prescribes the period in which a person can challenge a voter's

registration:

(1) Challenges must be filed with the county auditor of the county in which the challenged voter is registered *no later than 45 days before the election*. The county auditor presides over the hearing.

(2) Challenges may be filed after 45 days before the election, only when the challenged voter registered to vote less than 60 days before the election, or changed residence less than 60 days before the election without updating the residence address of the voter's voter registration. A challenge may then be filed not later than 10 days before any primary or election, general or special, or within 10 days of the voter being added to the voter registration database, whichever is later.

7

. . . .

(c) If the challenge is filed after the challenged voter's ballot is received, *the challenge cannot affect the current election*. However, the process shall proceed until the challenge is resolved.

(Emphasis added.)

RCW 29A.68.013 provides a cause of action and remedies regarding the certification of

elections:

Any justice of the supreme court, judge of the court of appeals, or judge of the superior court in the proper county shall, by order, require any person charged with error, wrongful act, or neglect to forthwith correct the error, desist from the wrongful act, or perform the duty and to do as the court orders or to show cause forthwith why the error should not be corrected, the wrongful act desisted from, or the duty or order not performed, whenever it is made to appear to such justice or judge by affidavit of an elector that:

(1) A wrongful act other than as provided for in RCW 29A.68.011 has been performed or is about to be performed by any election officer; or

(2) Any *neglect of duty on the part of an election officer* other than as provided for in RCW 29A.68.011 has occurred or is about to occur; or

(3) An error or omission has occurred or is about to occur in the official certification of any primary or election, including a challenge to the certification of any measure.

An affidavit of an elector under this subsection shall be filed with the appropriate court no later than ten days following the official certification of the primary or election.

(Emphasis added.)

Further, RCW 29A.68.020 states,

Any of the following causes may be asserted by a registered voter to challenge the right to assume office of a candidate declared elected to that office, to challenge the right of a candidate to appear on the general election ballot after a primary, or to challenge certification of the result of an election on any measure:
. . . .
(5) On account of illegal votes.

(a) Illegal votes include but are not limited to the following:

8

(i) More than one vote cast by a single voter;
(ii) A vote cast by a person disqualified under Article VI, section 3 of the state
Constitution.

(b) Illegal votes *do not include votes cast by improperly registered voters who were not properly challenged under RCW 29A.08.810 and 29A.08.820.*

All election contests must proceed under RCW 29A.68.011 or 29A.68.013.

(Emphasis added.)

RCW 29A.68.110(1) states,

No election for an office may be set aside on account of illegal votes, unless it appears that an amount of illegal votes has been given to the person whose right is being contested, that, if taken from that person, *would reduce the number of the person's legal votes below the number of votes given to some other person for the same office*, after deducting therefrom the illegal votes that may be shown to have been given to the other person.

(Emphasis added.)

RCW 29A.68.070 further limits remedies for election challenges based on the actions of a

county canvassing board:

No irregularity or improper conduct in the proceedings of any county canvassing board or any member of the board amounts to such malconduct as to annul or set aside any election unless the irregularity or improper conduct was such as to either, *reverse the outcome of an election measure* or procure the person whose right to the office may be contested, to be declared duly elected although the person did not receive the highest number of legal votes.

(Emphasis added.)

D.     APPLICATION OF RCW 29A.68.020(5)(b)

The County argues that RCW 29A.68.020(5)(b) bars Frohlich's challenge because he

failed to challenge the voters' registrations under RCW 29A.08.810 and RCW 29A.08.820,

meaning that the votes Frohlich challenges cannot be considered "illegal votes." Frohlich neither

responds to this argument nor references RCW 29A.68.020(5)(b) in his briefing, but he

maintains that the County neglected its statutory duties regarding voter registration address changes in a manner that resulted in counting illegal votes. We agree with the County.

Here, Frohlich's election challenge alleged that the County counted illegal votes of voters who voted in the LD-18 senate election but had moved out of the district. Frohlich asserted that this was due to Kimsey's negligent failure to regularly check change of address data and change voters' registrations.[2]

RCW 29A.68.020(5) permits an election contest to proceed under RCW 29A.68.013 "[o]n account of illegal votes." However, RCW 29A.68.020(5)(b) excludes from its definition of illegal votes "votes cast by improperly registered voters who were not properly challenged under RCW 29A.08.810 and 29A.08.820." The plain language of the statute is unambiguous. In order to pursue a claim based on illegal votes due to improper voter registration, a person must have properly challenged the voter's registration under RCW 29A.08.810 and RCW 29A.08.820. RCW 29A.08.820 requires a person challenging a voter's registration to bring their claim at least either 45 days or 10 days before the election, depending on when the person registered to vote.

Here, it is undisputed that Frohlich did not pursue any voter registration challenge under RCW 29A.08.810. In addition, he filed his election challenge to the voters' proper registrations after the election, which is outside of the time frame for a voter registration challenge required by RCW 29A.08.820. Therefore, because Frohlich did not "properly challenge[] [the voters'

---

[2] Frohlich appears to argue that his "neglect of duty" claim under RCW 29A.68.013 may be distinct from his illegal vote claim under RCW 29A.68.020(5). Frohlich does not cite the relevant statutes, so it is hard to determine the specific scope of his argument. However, RCW 29A.68.020 unambiguously states that an election challenge must proceed under RCW 29A.68.011 or RCW 29A.68.013. In any event, Frohlich asserted throughout the litigation that the County counted allegedly illegal votes as a result of Kimsey's alleged neglect of duty.

registrations] under RCW 29A.08.810 and RCW 29A.08.820," the votes he challenges cannot be considered illegal votes. RCW 29A.68.020(5)(b).[3]

Frohlich's election challenge against the County for a "neglect of duty" under RCW 29A.68.013(2) is premised on the counting of illegal votes by improperly registered voters under RCW 29A.68.020(5). But the votes Frohlich challenges cannot be considered illegal votes under RCW 29A.68.020(5)(b) as a matter of law. Therefore, Frohlich's claim of neglect of duty resulting in illegal votes fails as a matter of law.

Accordingly, we hold that the trial court did not err when it granted summary judgment in favor of the County.[4]

E.      APPLICATION OF RCW 29A.69.110(1)

Alternatively, the County argues that Frolich's claim fails because he did not attempt to show that the result of the election would have been different if the allegedly illegal votes had been counted. We agree.

RCW 29A.68.110(1) unambiguously requires a person challenging an election due to illegal votes to show that without the illegal votes, the winning candidate would have fewer votes than another candidate.

Even assuming the County counted illegal votes, Frohlich cannot meet RCW 29A.68.110(1)'s standard. A party must show that without the election irregularity the election

---

[3] Frohlich cites *Gold Bar Citizens for Good Government v. Whalen*, 99 Wn.2d 724, 665 P.3d 393 (1983) for the proposition that improperly cast ballots are illegal votes. In *Gold Bar*, the court interpreted former RCW 29.65.010(5), which permitted a voter to challenge an election "[o]n account of illegal votes." *Id.* at 727. But the legislature amended and recodified the statute to include RCW 29.68.020(5)(b) and its more specific definition of an illegal vote. LAWS OF 2003, ch. 111, § 2401. Therefore, *Gold Bar* is not relevant as to the proper interpretation of RCW 29A.68.020(5) and its applicability to this case.

[4] Frohlich does not argue that the trial court erred in dismissing his writ of quo warranto claim.

*would* have been impacted, not that it merely *could* have been impacted. *See In re Special Election on Moses Lake Sch. Dist. No. 161 Proposition 1*, 2 Wn. App. 2d 689, 699-700, 413 P.3d 577 (2018). Here, Frohlich – at best – shows that illegal votes could have impacted the election. But there is no evidence that any vote removed from Cortes would have gone to Benton or another candidate. Therefore, Frohlich cannot show that any illegal votes would have impacted the election.

We hold that Frohlich's election challenge independently fails on this basis.

CONCLUSION

We affirm the trial court's grant of summary judgment in favor of the County.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

MAXA, P.J.

We concur:

LEE, J.

CHE, J.